800 So.2d 1106 (2001)
Gary WILEY
v.
Earblean WILEY.
No. 01-0726.
Court of Appeal of Louisiana, Third Circuit.
November 7, 2001.
*1107 Charles Addison Riddle, III, Attorney at Law, Marksville, LA, Counsel for Gary Wiley.
W. Jay Luneau, Luneau Law Office, Alexandria, LA, Counsel for Earblean Wiley.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD and MARC T. AMY, Judges.
AMY, Judge.
The plaintiff filed suit against his mother asserting the claim of malicious prosecution stemming from an arrest for disturbing the peace and criminal trespass. The defendant filed a reconventional demand claiming entitlement to damages against the plaintiff for interference with her peaceful possession of the disputed property and a claim of harassment due to the filing of the instant litigation. The trial court dismissed the defendant's reconventional demand[1] and found in favor *1108 of the plaintiff, awarding him $3,000.00 in damages. The defendant appeals the finding of malicious prosecution. For the following reasons, we reverse.

Factual and Procedural Background
The present dispute arises from Gary Wiley's entrance onto the family property. The property in dispute is owned one-half by Earbline Wiley,[2] who also enjoys a usufruct over the entire estate, and naked ownership of the remaining one-half rests with her children by the late Wonnie Wiley. The record indicates that on or about May 21, 1998, Gary was summoned to the family property by his brother, Ronnie. Ronnie was concerned about the removal of an above-ground swimming pool, of which he claims to be the owner. Apparently, Earbline sold the swimming pool to Sandra Bryant and Ms. Bryant was on the family property to remove the pool.
Upon his initial arrival at the family property and learning of the sale and impending removal of the swimming pool, Ronnie called the Avoyelles Parish Sheriffs Department. Deputy Hershal Paulk arrived at the scene and advised Ronnie to present documentation of ownership of the swimming pool. According to testimony at trial, Gary is the custodian of all documentation from the succession proceedings of his late father and was purported to be in possession of the paperwork concerning the swimming pool. Ronnie proceeded to Gary's house where Gary located the appropriate documents and accompanied Ronnie back to the family property.
Gary arrived at the family property to find Deputy Paulk, Ms. Bryant, and the men helping Ms. Bryant. Gary presented the documents to Deputy Paulk and spoke with the group. After reviewing the documents, Deputy Paulk advised Ms. Bryant that she might want to refrain from removing the swimming pool until the matter of ownership was resolved.
Deputy Paulk was present, at all times, when Gary was present. According to the record, Earbline was never present during the May 1998 incident and has relied solely on the information of Ms. Bryant. It remains unclear why Earbline chose not to pursue criminal charges against Ronnie.[3] Furthermore, the parties stipulated in the trial court record that prior to the May 1998 incident, counsel for Earbline contacted counsel for Gary requesting that the children not enter the family property. The stipulation further provided that Earbline's attorney was relying on the authority of Earbline as usufructuary over the property. Additionally, counsel for Earbline notified the Avoyelles Parish Sheriffs Department of this request and each deputy received a memorandum. According to the record, Earbline was given full ownership of all movables on the family property at the time of her husband's death. The record indicates that, on a previous occasion, items had allegedly been taken from a shed located on the property and that this may be a factor that led to Earbline's request that no one should enter the property.
After consulting with and upon the advice of her attorney, Earbline testified that, on May 24, 1998, she signed a statement for the sheriffs office in an attempt *1109 to have Gary arrested for entering the family property. Consequently, Gary was arrested for disturbing the peace and criminal trespass. The grand jury, however, returned a no true bill.
Following his arrest and the favorable termination of proceedings by the grand jury, Gary instituted this action naming his mother as defendant and alleging malicious prosecution. As to this claim, the trial court found in favor of Gary and awarded damages of $3,000.00.
The defendant now appeals, assigning as error the trial court's finding that Earbline instituted a malicious prosecution against Gary. Specifically, Earbline contests the determination that there was not probable cause for the proceeding and the finding that the institution of criminal proceedings against Gary was malicious.

Discussion
The Louisiana Supreme Court has stated that "actions of this sort have never been favored" and a "clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent." Johnson v. Pearce, 313 So.2d 812, 816 (La.1975). See also, Southern Gen. Agency, Inc. v. Safeway Ins. Co. of La., 99-1892 (La.App. 3 Cir. 6/7/00); 769 So.2d 606, writ denied, 00-2055 (La.10/6/00); 771 So.2d 89. Accordingly, a plaintiff must prove six elements to succeed in a malicious prosecution case.
(1) The commencement or continuance of an original criminal or civil judicial proceeding;
(2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding;
(3) its bona fide termination in favor of the present plaintiff;
(4) the absence of probable cause for such proceeding;
(5) the presence of malice therein; and
(6) damage conforming to legal standards resulting to plaintiff.
Robinson v. Goudchaux's, 307 So.2d 287, 289 (La.1975). See also, Terro v. Chamblee, 95-70 (La.App. 3 Cir. 7/19/95); 663 So.2d 75.
Because the defendant assigns error in the trial judge's finding that probable cause did not exist and also asserts that the finding of the presence of malice was incorrect, we turn to a review of those elements. In consideration of these issues, the trial court's factual findings will be reviewed for manifest error. Winn v. City of Alexandria, 96-492 (La.App. 3 Cir. 11/20/96); 685 So.2d 281. When faced with a factual determination by the trial judge, this court's review is deferential. Id. However, even accepting the facts in this case as determined by the trial court, there is insufficient evidence to sustain the burden that the plaintiff must meet to succeed in a malicious prosecution action.
Earbline contends that she had probable cause to file a statement with the Avoyelles Parish Sheriffs Department. The Louisiana Supreme Court has instructed that probable cause is the "honest and reasonable belief in the guilt of the accused" at the time the charges were filed. Jones v. Soileau, 448 So.2d 1268, 1272 (La.1984). This standard requires the plaintiff to prove the reasonable state of mind of the defendant at the time the charges were filed. Kelly v. Wet Cash & Carry Bldg. Materials Store, et al., 99-0102 (La.App. 4 Cir. 10/20/99); 745 So.2d 743. "Probable cause depends not merely upon the actual facts in the case, but upon the defendant's honest belief of the facts when making charges against the plaintiff." Craig v. Carter, 30-625, p. 3 (La. App. 2 Cir. 9/23/98); 718 So.2d 1068, 1071, writ denied, 98-2698 (La.1998), 734 So.2d *1110 636. See also, Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2 Cir.1975). Additionally, "probable cause to file suit is a question which depends upon particular facts as perceived by the person bringing the action." Ballard v. Mook, 550 So.2d 1208, 1212 (La.App. 4 Cir.1989), See also, Hibernia Nat'l Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980).
Earbline also argues that Gary failed to meet the burden of proving any malicious intent. Malice can be inferred when the evidence shows that "the claimant acted with absence of caution and inquiry that a person should employ before filing a suit." Jones v. Soileau, 448 So.2d at 1272. Moreover, malice exists when there is "knowledge that it is false or a reckless disregard for the truth." Aucoin v. Aetna Cas. & Sur. Co., 520 So.2d 795, 798 (La.App. 3 Cir.1987).
Gary was arrested on charges of criminal trespass[4] and disturbing the peace. Upon presentation of the case to a grand jury, the grand jury returned a no true bill.
When reviewing the question of the presence, or absence, of probable cause and malice, we conclude that Gary failed to prove by a preponderance of the evidence that Earbline was accountable for the specific charges or unreasonable in filing the voluntary complaint. The evidence of the record does not establish that Earbline did anything more than file a voluntary statement which was the basis for the Justice of the Peace executing an arrest warrant. Earbline argues in her brief and the record supports the argument that she did not request the filing of any specific charge.[5] This duty was left to the Justice of the Peace. Without any evidence to the contrary, we find that there was an insufficient basis on which to conclude that Earbline was unreasonable in filing a statement.
When reviewing the trial court's determination that Earbline did not have probable cause to file the voluntary statement and that she acted with malice, we turn to several facts set forth in the record, focusing on whether Earbline's state of mind was reasonable. Here, Earbline made what appeared to be an informed decision to file a complaint as evidenced by the fact that she consulted with counsel before taking any legal action. Previously, she had consulted with legal counsel who advised her that her rights as usufructuary included the right to prohibit the entry of the naked owners upon the land. The parties stipulated at trial that Gary's attorney, as well as the sheriff's office, was notified of Earbline's request. Additionally, the parties stipulated that Gary's attorney would inform Gary of Earbline's request, but made it clear that he disagreed with the legal interpretation. When considering *1111 Earbline's knowledge that her attorney had contacted Gary's attorney and the sheriff's department, the record indicates that it was her appreciation that she was acting within her rights. Therefore, the record demonstrates that Earbline had an honest and reasonable belief that the actions of Gary were prohibited and with this belief, she followed the advice of her attorney and the determination by the Justice of the Peace to press charges.
Next, the trial court based the finding of malice on the conflicting family history. The trial judge reasoned, "In the case at bar the evidence is overwhelming that these parties have malice toward one another." Also, the trial judge pointed out that Earbline chose to pursue only one of the two sons. Although the trial judge may have correctly decided that the parties had ill feelings toward one another, this finding does not lead to a conclusion that Earbline acted with malice under the legal standard applicable here, i.e. absence of caution, a reckless disregard for the truth, or knowledge of falsity.
Earbline relies heavily on the stipulation by the parties that Gary was to be advised by his attorney that Earbline requested that he not enter the property[6]. In addition to this, Earbline cites the memorandum from Captain Travis Wiley of the Avoyelles Parish Sheriff's Department, to his sheriff's deputies, wherein he stated:
Attorney Jay Luneau has notified this department that Earbline Wiley's children have no right to be on the property. If this situation exists, advise the children that they should leave, or they may face criminal trespass charges placed upon them by their mother, Earbline. Advise Earbline Wiley of the option to file this charge.
As observed above, Earbline used caution, before filing a complaint, by seeking the advice of legal counsel and following that advice. Factually, Earbline was informed that Gary had been on the family property and the record supports this conclusion. Thus, the record does not support a finding that Earbline acted with knowledge of falsity or absence of caution.
In sum, because we conclude that the record does not contain evidence sufficient for a finding that Earbline engaged in a malicious prosecution against Gary, we reverse the judgment of the trial court and render judgment for the defendant.

DECREE
For the foregoing reasons, the judgment in favor of Gary Wiley, the plaintiff, is reversed and judgment is rendered in favor of the defendant, Earbline Wiley, dismissing plaintiff's claim of malicious prosecution with full prejudice. All costs of these proceedings are assigned to the plaintiff.
REVERSED AND RENDERED.
NOTES
[1] Insofar as this appeal is considered, the defendant did not allege error with the dismissal of the reconventional demand. Therefore, the district court's dismissal of the reconventional demand is final.
[2] This court is adhering to the spelling of Ms. Wiley's name in the district court decision. However, we observe that several spellings of Ms. Wiley's first name have been presented in the documents concerning the present case.
[3] We do note that the plaintiff's exhibit # 1 includes a report of arrest for Ronnie on May 30, 1998. Ronnie was arrested pursuant to La.R.S. 14:103 and La.R.S. 14:63, disturbing the peace and criminal trespass. The complainant is listed as Earbline Wiley.
[4] La.R.S. 14:63(B) provides that criminal trespass is established as:

B. No person shall intentionally enter immovable property owned by another:
(1) When he knows his entry is unauthorized, or
(2) Under circumstances where he reasonably should know his entry is unauthorized. (emphasis added)
While the above statute may indicate that no criminal prosecution on the charge of criminal trespass may have been successful against Gary, a naked owner, our review focuses on the honest and reasonable belief of Earbline, a layman, in the guilt of Gary in determining the issue of probable cause.
[5] Earbline's voluntary statement in its totality is:

On 5-21-98 Ronnie Wiley and Gary Wiley came on my property, started talking bad to a lady and her name Sandra Bryant [sic] told her she could not have that swimming pool. Ronnie told her that he would be back but it would not [sic] with law. I have no trespassing signs on my property up, but now they are gone. I told them to stay off my property.
[6] La.Civ.Code art. 566 states that a "usufructuary may institute against the naked owner... all actions that are necessary to insure the possession, enjoyment, and preservation of his right." Accordingly, in State v. Peterson, 623 So.2d 919 (La.App. 4 Cir.1993), the fourth circuit held that a grandson, who was one-eighth naked owner, could not enter the property of which his grandmother was usufructuary without her permission. The fourth circuit cited La.Civ.Code art. 605 explaining that a "naked owner cannot interfere with the rights of the usufructuary" in the enjoyment of the property. Id. at 921.